UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Jennifer Styczinski, Thomas Styczinski, and on behalf of the minor A.S., | Case No. 24-cv-02664 (JMB/ECW) |
| v. | **ORDER** |
| City of Eden Prairie, Valerie Verley in her individual and official capacities as Community Center Manager, or her successor in their official capacity, and Amy Markle in her official capacity as the City's Parks and Recreation Director, or her successor in their official capacity | |
| Defendants. | |

This matter came before the Court on Plaintiffs' Motion for Leave to Amend the Pleadings to Add Claim for Punitive Damages (Dkt. 21) filed May 30, 2025. For the reasons stated below, the Court denies Plaintiffs' motion.

## I.  BACKGROUND

Plaintiffs filed a Complaint in this matter on July 9, 2024, bringing claims against the City of Eden Prairie ("the City") and two of its employees under 42 U.S.C. § 1983. (Dkt. 1 at 24, 30.)[1] Employee Valerie Verley was named as a defendant in "her individual and official capacities as Community Center Manager, or her successor in their official capacity," and employee Amy Markle was named as a defendant "in her official

---

[1]  Citations to page numbers are to the CM/ECF pagination unless otherwise indicated.

capacity as the City's Parks and Recreation Director, or her successor in their official capacity." (*Id.* at 1.) Plaintiffs allege that Defendants violated their First and Fourteenth Amendment rights by banning Plaintiffs from the aquatics area of the Eden Prairie Community Center ("EPCC") for violating the EPCC's Verbal Abuse Policy ("the Policy"), and because the Policy "failed to provide any evidentiary process or appellate process to challenge the decision." (*Id.* at 2.)

As to Verley, the Complaint alleges that she emailed Plaintiff Jennifer Styczinski about an incident that took place between Plaintiffs and EPCC staff on April 5, 2022. (*Id.* ¶¶ 20, 45-46.) During that incident, Plaintiffs had informed an EPCC manager-on-duty that two staff members' behavior towards Plaintiffs, including minor A.S., was inappropriate. (*Id.* ¶¶ 39-42.) Verley's email "threatened the Styczinski family's membership to EPCC." (*Id.* ¶ 45.) Verley's email stated that "it was inappropriate for [Thomas Styczinski] to ask to speak to the on-duty manager" and "accused [Thomas Styczinski] as being pretty rude and disrespectful toward staff." (*Id*. ¶ 46.) Verley had not witnessed the April 5, 2022 incident, but never asked Plaintiff for their version of events. (*Id*. ¶ 47.) Verley also "failed to directly notify [Thomas Styczinski] of her email statements." (*Id.*) Plaintiffs further allege that video footage of the April 5 incident exists, and that Verley "either failed to review the video footage of the April 5, 2022 encounter or willingly made misrepresentations of that video recording footage because she included false statements about the demeanor of both [Thomas Styczinski] and A.S." in her email. (*Id.* ¶¶ 48-53.)

2

The Complaint further alleges that Verley emailed Jennifer Styczinski again following another incident that took place at the EPCC aquatics area on July 15, 2022. (*Id.* ¶ 88.) During that incident, Plaintiffs had raised concerns about what they believed to be inappropriate behavior by EPCC lifeguards. (*Id.* ¶¶ 56-87). Verley's email "announc[ed] that the Styczinski family were permanently prohibited from access to the aquatics area and further threaten[ed] their EPCC membership." (*Id.* ¶ 88.) Verley based this decision on the Policy. (*Id.* Dkt. 1 ¶ 89.) "Verley indicated that the Styczinski's [sic] speech in two incidents, which were the April 5, 2022 of A.S. reporting harassment, and the July 15, 2022 Styczinski challenge of the inappropriate behavior of the lifeguards, were the but-for cause of her punitive actions." (*Id.* ¶ 99.) Plaintiffs further allege that Verley also made false statements of fact in emails about the July 15 incident and failed to give Plaintiffs "any notice of appeal." (*Id.* ¶¶ 93-96, 98, 219.) Verley "knows that the First Amendment to the U.S. Constitution protects speech that criticizes the government" and is aware that the First Amendment "is applicable to the Styczinskis." (*Id.* ¶¶ 155, 220.) The original Complaint sought declaratory and injunctive relief, compensatory damages, and nominal damages. (*Id.*)

Under the September 16, 2024 Scheduling Order, the original deadline to file a motion to amend the pleadings to include punitive damages was March 31, 2025. (Dkt. 18 at 5.) Plaintiffs later brought an unopposed motion to amend the scheduling order to extend this deadline. (Dkt. 19.) The Court granted the motion and extended the deadline to file a motion to amend the pleadings to include punitive damages to May 30, 2025. (Dkt. 20 at 1.)

3

On May 30, Plaintiffs filed a Motion for Leave to Amend the Pleadings to add a claim for punitive damages. (Dkt. 21.) Defendants opposed the motion, arguing that the claim for punitive damages would be futile. (Dkt. 24 at 1.) Plaintiffs did not file a reply brief, although they were permitted to do so under the Pretrial Scheduling Order. (*See* Dkt. 18 at 5 ("If the non-movant argues futility in opposition to a motion to amend, the movant may file a reply brief in support of the motion to amend within three (3) business days after the opposition is filed.").)

## II.    LEGAL STANDARD

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). However, a court may deny a motion to amend a complaint if the amendment would be futile. *Jackson v. Riebold*, 815 F.3d 1114, 1122 (8th Cir. 2016). An amendment is futile when the claim would not withstand a motion to dismiss for failure to state a claim upon which relief can be granted. *Streambend Props. III, LLC v. Sexton Lofts, LLC*, 297 F.R.D. 349, 357 (D. Minn. 2014); *Cornelia I. Crowell GST Tr. v. Possis Med., Inc.,* 519 F.3d 778, 782 (8th Cir. 2008).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). In applying this standard, the Court must "assume the facts in the complaint to be true and take all reasonable inferences from those facts in the light most favorable to the plaintiff." *Boyd v. Target Corp.,* 750 F. Supp. 3d 999, 1009 (D. Minn. 2024) (citing

4

*Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986)). The Proposed Amended Complaint references and relies on the Eden Prairie City Code as well as several exhibits and other documents. (*See generally* Dkts. 21-1 to 21-2.) "Though matters 'outside the pleadings' may not be considered in deciding a Rule 12 motion to dismiss, documents necessarily embraced by the complaint are not matters outside the pleading." *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017) (quoting *Enervations, Inc. v. Minn. Mining & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004)). Thus, a court may consider items subject to judicial notice, matters of public record, orders, and exhibits attached to the complaint whose authenticity is unquestioned, without converting the motion into one for summary judgment. *Id.*; *see also Miller v. Redwood Toxicology Lab, Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012); *E. Coast Test Prep LLC v. Allnurses.com, Inc.*, 307 F. Supp. 3d 952, 962 (D. Minn. 2018) (citing *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007) (discussing court records)) ("Also included [in materials that are necessarily embraced by the pleadings] are public records that do not contradict the complaint."), *aff'd*, 971 F.3d 747 (8th Cir. 2020). No party has questioned the authenticity of the exhibits to the Proposed Amended Complaint.

### III.   ANALYSIS

Neither the Motion (Dkt. 21), the Proposed Amended Complaint (Dkt. 21-1), nor the supporting brief (Dkt. 22) states from which Defendants Plaintiffs seek punitive damages or identifies for each Defendant what conduct allegedly gives rise to entitlement to punitive damages. The Proposed Amended Complaint names the same three Defendants as the original Complaint: the City, Verley in her individual and official

capacities, and Markle in her official capacity. (*See* Dkt. 21-1 at 1.) The Court addresses each Defendant in turn below.

A.  **Municipal Defendants**

To the extent that Plaintiffs seek punitive damages from the City, this claim is futile. The Supreme Court has held that municipalities are immune from punitive damages in § 1983 actions. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981) ("[W]e hold that a municipality is immune from punitive damages under 42 U.S.C. § 1983."). The Court denies the Motion insofar as Plaintiffs seek leave to amend to add a claim for punitive damages against the City, because that claim would be futile.

The same is true for any claim for punitive damages against Defendants Verley and Markle in their official capacities (and their successors) because § 1983 actions against municipal officials in their official capacities are treated as actions against the municipality itself. *See Morris v. Cradduck*, 954 F.3d 1055, 1060 (8th Cir. 2020). Therefore, the Court denies the Motion insofar as Plaintiffs seek leave to amend to add a claim for punitive damages against Defendants Verley and Markle (and their successors) in their official capacities. In doing so, the Court notes that Plaintiffs did not identify any basis for seeking punitive damages against a municipality or make any argument for extending, modifying, or reversing existing law or for establishing new law.

B.  **Defendant Valerie Verley in her Individual Capacity**

Defendant Verley was the Community Center Manager of the EPCC at the time of the events at issue in this lawsuit and when Plaintiffs filed the Complaint. (Dkt. 1 ¶ 6.) Plaintiffs sued Verley in her individual capacity and continue to do so in the Proposed

Amended Complaint. (Dkt. 1 ¶ 6; Dkt. 21-1 ¶ 6.) While punitive damages are not available against municipal officials in their official capacities, they are available against municipal officials in their individual capacities. *See Smith v. Wade*, 461 U.S. 30, 35 (1983). However, the Supreme Court has held that punitive damages are available only "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Id.* at 56.

Plaintiffs disclaim alleging that Verley (or any other Defendant) was motivated by evil motive or intent. (*See* Dkt. 22 at 7.) Instead, they seek punitive damages based on alleged "reckless or callous indifference exists to federal rights guaranteed by the U.S. Constitution, namely the First Amendment and Due Process Rights." (*Id.*)

A § 1983 complaint "must set forth specific factual allegations showing what each named defendant allegedly did, or failed to do, while acting under color of state law" to violate the plaintiffs' constitutional rights. *Bishop v. Jesson*, No. CV 14-1898 (ADM/SER), 2016 WL 8674584, at *12 (D. Minn. Feb. 12, 2016), *R. & R. adopted*, 2016 WL 906422 (D. Minn. Mar. 9, 2016); *see also Ellis v. Norris*, 179 F.3d 1078 (8th Cir. 1999) (dismissing a § 1983 complaint where a plaintiff "failed to allege facts supporting any individual defendant's personal involvement or responsibility for the violations"). Accordingly, in evaluating whether Plaintiffs have plausibly alleged that Verley's actions involved reckless or callous indifference to the federally protected rights of others, the Court considers only the allegations specific to Verley in the Proposed Amended Complaint. (Dkt. 21-1.) In doing so, the Court assumes the facts alleged in the Proposed

7

Amended Complaint to be true and draws all reasonable inferences from those facts in the light most favorable to the plaintiff. *Boyd*, 750 F. Supp. 3d at 1009.

The Proposed Amended Complaint contains a "Facts Supporting Punitive Damages" section related to ordinances and policies of the City of Eden Prairie and the EPCC. (Dkt. 21-1 ¶¶ 150-80.) Verley is mentioned in five paragraphs in those "Facts," as set forth below:

> 152. The Annual Report displays a hierarchy of authority, with the City Council (composed of the Mayor and its members) at the top. Below the City Council is the Parks and Recreation and Natural Resources Commission, with its chair, vice chair, and members. Below the Commission is City Manager Rick Getschow. Next, then-Parks and Recreation Director Jay Lotthammer was directly below the City Manager, and above Community Center Manager Valerie Verley, and others.
>
> …
>
> 165. In her deposition of May 22, 2025 (transcript not yet available), former Eden Prairie Community Center Manager Valerie Verley testified (in summary) that Director of Parks and Recreation (at the time in 2022, Jay Lothammer [sic]) had approved the Verbal Abuse Policy, but she had no knowledge that anyone above Director Jay Lothammer [sic] had seen or approved the Policy.
>
> 166. In that same deposition of May 22, 2025 (transcript not yet available), former Eden Prairie Community Center Manager Valerie Verley testified that she had no knowledge of the City Counsel [sic] of the City of Eden Prairie approving or or [sic] voting on the Verbal Abuse Policy.
>
> …
>
> 176. The Styczinskis believe the Verbal Abuse Policy was adopted for enforcement by EPCC Manager Valerie Verley in December 2021 without following review procedures to determine whether an appeals process was necessary.
>
> …

8

> 180. The Styczinskis believe the Verbal Abuse Policy was adopted for enforcement by EPCC Manager Valerie Verley in December 2021 without following review procedures to determine whether the policy violates the First Amendment freedom of speech either by punishing or chilling protected speech, or both.

(Dkt. 21-1 ¶¶ 152, 165-66, 176, 180.) The "hierarchy of authority" is an organizational chart available at a URL contained in paragraph 151 of the Proposed Amended Complaint.[2] (*See id.* ¶ 151.)

Plaintiffs argue in their supporting brief that punitive damages are appropriate in this case because the Policy, which Plaintiffs contend is unconstitutional, was not reviewed by anyone "higher, or other than Parks and Recreation Director Jay Lothammer [sic]," before it went into effect. (Dkt. 22 at 7-8.) Plaintiffs argue that this is "evidence of a reckless disregard for federally-protected rights of others" because "Eden Prairie City [o]rdinances provide for policy review by the City Manager, the Parks, Recreation and Natural Resources Commission, and the City Council." (*Id.*)

Defendants contest Plaintiffs' characterization of the City ordinances. (Dkt. 24 at 18-24.) Defendants further argue that "even if the Court accepts as true for purposes of this motion that no one 'above' Lotthammer reviewed the verbal abuse policy, Plaintiffs have not plausibly alleged that Section 1983 liability and punitive damages are available against Verley for failure to have the policy reviewed by persons other than her direct supervisor." (*Id.* at 19.) In particular, Defendants argue that Plaintiffs are asking that "the Court deem it plausible that Verley, after obtaining Lotthammer's approval of the

---

[2] Defendants included a copy of this chart as an exhibit to their opposition. (*See* Dkt. 25-5 at 3.)

9

policy (which she did), was required by the City Code to seek and obtain further review and approval of the policy by some combination of the City Manager, the Commission, the City Council, and 'an attorney.'" (*Id.* at 22.)

Having reviewed the Proposed Amended Complaint and materials necessarily embraced by it, including the organizational chart and City Code, the Court concludes that the proposed claim for punitive damages against Verley is futile for at least three reasons. As far as the Court can discern, the basis in the Proposed Amended Complaint for seeking punitive damages as to Verley is that "[t]he Styczinskis believe the Verbal Abuse Policy was adopted for enforcement by EPCC Manager Valerie Verley in December 2021 without following review procedures," where the "review procedures" are alleged to be "multiple levels of review"—specifically "three further levels of review"—"provide[d] for" in Eden Prairie City Code § 2.23, subd. 2(C)(2). (Dkt. 21-1 ¶¶ 160-163, 170, 176, 180.) Neither the Proposed Amended Complaint nor the supporting brief offers any other rationale for punitive damages.

First, Section 2.23, subd. 2(C)(2) does not support the allegations that the City Code provides for "multiple levels of review" or "three further levels of review" beyond the Director. Section 2.23, subd. 2(C)(2) simply states that the Parks, Recreation and Natural Resources Commission's duties and responsibilities include acting in an advisory capacity on several matters, including:

> 2. The conduct of the complete program of recreation opportunities within the City and charging the Commission with review of development proposals, including:

  (a) Review of proposed and existing recreation programs and advice to the Recreation Staff on programming and the operation of all such opportunity.

  (b) Recommendation of policies to the Council on matters pertaining to the operation of recreation facilities and program.

  (c) Recommendation of an annual budget for the operation of said programs and facilities to the Council in time for inclusion in the budget proposal.

  (d) Cooperation and coordination of recreation and other leisure opportunity and proposals with other City Groups, school groups, community groups, and County, State and Federal agencies that have application within the City.

Eden Prairie City Code § 2.23, subd. 2(C)(2).[3]

Indeed, the Proposed Amended Complaint does not identify any language in the City Code supporting Plaintiffs' allegation that the cited subdivision provides for "multiple levels of review" (much less "three further levels"). The only language from Code § 2.23, subd. 2(C)(2) quoted in the Proposed Amended Complaint is that the Commission's tasks "**may** include (b) '**Recommendation** of policies to the Council on matters pertaining to the operation of recreation facilities and program.'" (Dkt. 22-1 ¶ 160 (emphases added).) This paragraph of the City Code does not establish multiple layers of review by persons senior to Director Lotthammer.

The Proposed Amended Complaint does allege that "[c]ity ordinance provide [sic] for or [sic] multiple levels of review for policies pertaining to the operation of recreation

---

[3]  The referenced portions of the Eden Prairie City Code were filed as Exhibits 1 through 4 to the Declaration of Katherine M. Swenson in Support of Defendants' Opposition to Plaintiffs' Motion for Leave to Amend the Pleadings to Add Claim for Punitive Damages (Dkts. 25-1 through 25-4).

11

facilities and program" and that there are "three further levels of review" beyond the Director's. (Dkt. 21-1 ¶¶ 161, 170.) But Plaintiffs cannot defeat a futility analysis by alleging that the City Code says something when the City Code in fact says nothing of the sort. *See Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) ("When an exhibit incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls, even when considering a motion to dismiss."); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.) ("The court need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit. Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.") (citation modified), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001); *Lindsey v. City of Minneapolis, No. CV 15-1202 (WMW/BRT)*, 2016 WL 11483858, at *2 (D. Minn. Mar. 30, 2016) ("A court need not, however, assume the truth of a complaint's conclusory statements, including legal conclusions couched as factual allegations, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), nor must it accept allegations contradicted by matters subject to judicial notice, such as the records of state court proceedings."), *R. & R. adopted as modified*, No. 15-CV-1202 (WMW/BRT), 2016 WL 3360485 (D. Minn. June 16, 2016); *Reginella Const. Co. v. Travelers Cas & Sur. Co. of Am.*, 971 F. Supp. 2d 470, 475 (W.D. Pa. 2013) ("If the Court were required to accept contradictory inferences and conclusory allegations as well-pleaded facts, then Rule 12(b)(6) review would be nothing more than the Court alchemizing legally insufficient statements into a plausible cause of action. Such a standard of review is akin to no review at all, and most importantly, is not the law."),

*aff'd sub nom. Reginella Const. Co. v. Travelers Cas. & Sur. Co. of Am.*, 568 F. App'x 174 (3d Cir. 2014).

The Proposed Amended Complaint's reliance on an organization chart showing three levels of hierarchy above Director Lotthammer (Dkt. 21-1 ¶ 152; Dkt. 22 at 7-10) does not cure this defect. Indeed, Plaintiffs cite no authority for the proposition that an organizational chart in a document external to the City Code somehow modifies the City Code to create a mandatory multi-level review process. And while the Court must draw all reasonable inferences in Plaintiffs' favor, the Court cannot reasonably infer a multi-level or three-level review process based on a City Code that does not set forth any review process and an organizational chart. In sum, the City Code cited by Plaintiffs demonstrates that their allegations that the City Code required a specific review process is not plausible. Because their claim for punitive damages against Verley relies on these allegations, the Court denies the Motion on futility grounds.

Second, even if the Court accepted for purposes of this Motion that Eden Prairie City Code § 2.23, subd. 2(C)(2) did require that the Policy be reviewed by multiple persons "above" Director Lotthammer, the punitive damages claim against Verley would still be futile. This is because the Proposed Amended Complaint does not allege that Verley had any responsibility or ability to ensure that the Policy underwent review by anyone other than Director Lotthammer.[4] The Proposed Amended Complaint makes

---

[4] "Defendants do not concede that Verley was required to obtain Lotthammer's approval of the policy, but for purposes of this motion accepts Plaintiffs' allegations that she did obtain his approval, making that issue unnecessary for the Court to

clear that Verley sits at the bottom of the organizational "hierarchy." (Dkt. 21-1 ¶ 152.) The Court cannot reasonably infer that the person at the bottom of the hierarchy was responsible for ensuring that a Policy is reviewed by the Commission, the City Manager, the City Council, or a City attorney; has the ability to ensure such review happened; or would even be involved in such review. Plaintiffs also have not identified any legal theory supporting this argument. To the extent Plaintiffs rely on Eden Prairie City Code § 2.23, subd. 2(C), that section sets forth the duties and responsibilities of the Parks, Recreation and Natural Resources Commission. (Dkt. 25-2 at 3-4.) Verley is not a member of the Commission (Dkt. 25-5 at 3), so that section does not apply to her.[5] In sum, Plaintiffs have not plausibly alleged that Verley had any personal involvement or responsibility for the conduct of which they complain—which is that the Policy was not reviewed by anyone "above" Director Lotthammer. This is another reason why their proposed punitive damages claim against Verley is futile. *See Fisherman v. Milender*,

---

resolve at this stage." (Dkt. 24 at 19 n.12.) Given that the Proposed Amended Complaint acknowledges that Verley obtained Director Lotthammer's approval (Dkt. 21-1 ¶ 165), the Court need not address whether Director Lotthammer's approval was required, as it has no bearing on the issues raised by the Motion.

[5]   The "Facts Supporting Punitive Damages" section in the Proposed Amended Complaint refers to Eden Prairie City Code §§ 2.04, 2.30, and Section 2.80. (Dkt. 22-1 ¶¶ 154, 156, 177-78.) However, it does not contain any allegations linking Verley to any of these sections; it focuses on her alleged failure to "follow[] review procedures" (*See id.* ¶¶ 176, 180.) If Plaintiffs had a punitive damages theory against Verley independent from their "review procedures" theory, it is not apparent from the Proposed Amended Complaint or the Motion and supporting papers. The Court will not address any such theoretical claims further. *See Gregory v. Dillard's, Inc.*, 565 F.3d 464, 473 (8th Cir. 2009) ("A district court . . . is not required to divine the litigant's intent and create claims that are not clearly raised, and it need not conjure up unpled allegations to save a complaint.") (citation modified).

No. 23-CV-3836 (DSD/ECW), 2025 WL 476225, at *8 (D. Minn. Jan. 22, 2025) (recommending dismissal of § 1983 claim against Health Services Administrator based on failure to prescribe Gabapentin where Plaintiff had not alleged the Administrator had prescribing authority or could force a medical professional to do so and the court could not reasonably infer she was able to do so), *R. & R. adopted*, No. CV 23-3836 (DSD/ECW), 2025 WL 475497 (D. Minn. Feb. 12, 2025).

Third, even if the Court assumed both that the City Code provided for review beyond Director Lotthammer and that Verley had responsibility for or involvement in such review, the Proposed Amended Complaint does not contain any factual allegations that Verley's alleged failure to do so constituted "reckless or callous indifference to the federally protected rights of others." *See Smith*, 461 U.S. at 35. Plaintiffs cite no law supporting the proposition that without more, the failure to adhere to a review policy gives rise to punitive damages in a § 1983 case.

The Court notes that the Eighth Circuit has denied punitive damages even where individuals were found to have unconstitutionally retaliated against plaintiffs for their protected First Amendment activity. In *Cornell v. Woods*, the Eighth Circuit affirmed a district court's denial of punitive damages when prison officials disciplined an inmate for cooperating with an internal investigation of another prison official. 69 F.3d 1383, 1386-87 (8th Cir. 1995). The Eighth Circuit concluded that even though the defendants were not entitled to qualified immunity because "the unlawfulness of their actions should have been apparent to them," the defendants' conduct did not "rise to a level of egregiousness sufficient to justify the imposition of punitive damages." *Id.* at 1390-91.

15

The Eighth Circuit explained in another case that "proving reckless indifference requires evidence that the defendant acted in the face of a perceived risk that his or her actions would violate federal law." *McAdoo v. Martin*, 899 F.3d 521, 527 (8th Cir. 2018). Here, while Plaintiffs have alleged that Verley is aware that the First Amendment "is applicable" to them (Dkt. 21-1 ¶ 251), they have not alleged that Verley was aware that failing to have the Policy reviewed by anyone above Director Lotthammer would result in a violation of federal law, that the absence of "an appeals process" violated federal law, or that Verley was aware that the Policy itself violated federal law, or that any unlawfulness of such conduct should have been apparent to her. In sum, the Proposed Amended Complaint does not allege any facts from which the Court can reasonably infer, or rendering it plausible based on the allegations, that Verley acted in a way that gives rise to a claim for punitive damages.

**C.    Procedural Deficiencies**

Defendants raise Plaintiffs' failure to comply with the meet-and-confer requirements of D. Minn. LR 7.1(a) as an alternative basis to deny Plaintiff's Motion. (Dkt. 24 at 25-27.) That Rule required Plaintiffs to "if possible, meet and confer with the opposing party in a good-faith effort to resolve the issues raised by the motion," although "[t]he moving and opposing parties need not meet in person." D. Minn. LR. 7.1(a). If the opposing party is not available to meet and confer before the moving party files its motion, the moving party is required to "promptly meet and confer with the opposing party after filing the motion and must supplement the motion with a meet-and-confer-statement." D. Minn. LR. 7.1(a)(1)(A).

16

Plaintiffs admit they did not meet and confer with Defendants before filing their Motion. (*See* Dkt. 21 at 1-2.) Plaintiffs called counsel for Defendants on the deadline for filing a motion to amend to add punitive damages (in the afternoon) and Defendants responded by email within the hour that they were unable to take a position because they had not seen the proposed amendments and therefore did not agree to the proposed amendment (Dkt. 25 ¶¶ 4-8; Dkt. 25-6 at 2). Plaintiffs did not respond to the email or make any attempts to meet and confer with Defendants after filing their Motion. (*See* Dkt. 25 ¶ 9.) In other words, Plaintiffs waited until the last minute to meet and confer with Defendants, and when Defendants' counsel were not available to answer the phone, filed their Motion and failed to comply with the requirement that they "promptly meet and confer" after filing the Motion and supplement their meet-and-confer statement. The meet and confer requirement is not a procedural nicety; it exists to narrow the issues. Here, had Plaintiffs met and conferred with Defendants, that discussion likely would have (and certainly should have) narrowed the issues at least inasmuch as Plaintiffs could have clarified which Defendant they sought punitive damages from—particularly when they appear to be seeking punitive damages from a municipality in contravention of binding Supreme Court precedent. "A district court does not abuse its discretion in denying leave to amend where a plaintiff has not followed applicable procedural rules." *O'Neil v. Simplicity, Inc.*, 574 F.3d 501, 505 (8th Cir. 2013). Plaintiffs gave no explanation for waiting until the last minute to meet and confer or their failure to meet and confer and properly supplement after filing their Motion. This is another independent reason to deny the Motion.

## IV. ORDER

For all these reasons, and based on the files, records, and proceedings herein, **IT IS ORDERED** that: Plaintiffs' Motion for Leave to Amend the Pleadings to Add Claim for Punitive Damages (Dkt. 21) is **DENIED**.

Dated: September 18, 2025          <u>*s/Elizabeth Cowan Wright*</u>
                                   ELIZABETH COWAN WRIGHT
                                   United States Magistrate Judge